Please rise. The Illinois County Court of Third Division is now in session. I will now present the state's juror's fifth statement. Take a seat. Call the case. 1439 6th and Jordan v. St. Louis v. Hoddenbach Please step up and identify yourselves. And understand this is not a microphone for purposes of talking. It's for recording. My name is Richard McLeese and I represent the appellant, Zayle Hoddenbach. Assistant State's Attorney Gina DeVito on behalf of the people. You know our standard procedure is 15-15, but since there's only one case and we're pretty easy going, as long as you don't sit here for the next 10 hours and repeat yourselves. May I please the court? It didn't take long, your honors, for this trial to become infected with unfairness. Could you speak up, please? Yes. Speak up. Speak up, please. It did not take long, your honors, for this trial to become infected with unfairness. Shortly into the state's opening statement, the first signs of this infection appeared when the state was permitted, over objection, to make an explosive claim relating to the defendant's daughter that the state's attorney did not then have reasonable grounds to believe that she would be able to back up with admissible evidence. This infection of unfairness then spread into the state's presentation of witness testimony, into the defense case, into the closing arguments, and into the jury deliberations. What I would like to do this morning, your honors, subject of course to the court's wishes and questions, is to talk about a few examples of this pervasive unfairness. And these examples can be loosely categorized in two ways. The first referred to examples of unfairness that resulted when the judge permitted the jurors to hear things that the jurors never should have heard. What things are you talking about, Mr. McLeish? Can you just be more specific as opposed to... Yes, and I was going to get right to that, and I will get right to that, Judge. Just the second category is when the judge treated both sides in fundamentally different ways. But to get to your point, Judge, in a trial untainted with unfairness, a judge would never allow the state to put on as a witness without any kind of preliminary voir dire examination of that witness outside the presence of the jury. To put that witness right on in front of the jury where the prosecutor does not have reasonable grounds to believe that she will be able to elicit any admissible evidence from that witness, and it would be highly prejudicial for the jury to even hear these questions because the questions themselves, irrespective of the answers, would be extremely damaging. And that's what the judge did here when he permitted the state to put on as a witness without any preliminary voir dire of her... There was before the trial. There was not preliminary voir dire examination of the witness before the trial, Your Honor.  I believe that the state's attorney said that she didn't know what she was going to say. Go ahead. And not knowing what she was going to say, and in fact, the judge, Your Honor, during colloquy outside the presence of the jury, the judge at one point says, well, I don't know what she's going to say, but we'll see. We'll put her in front of the jury. But the section does not require him to do other than what he did. The section does not by its terms include a requirement of a voir dire examination. But, of course, many sections of many rules and statutes do not require things that, in a matter of conducting a fair and just trial, judges have to do as a matter of course. And in the Brothers case, which I cite, Justice Steigman makes clear that there always should be a voir dire examination. And doesn't he really more suggest that that would be best practice? He does refer to that there as being best practice. In the article that he wrote shortly after the statute was enacted, he made it clear, and I attached that article to the reply brief, that it was always necessary, because otherwise you can have a highly prejudicial situation where the jurors have heard these inflammatory prejudicial questions. They haven't heard any admissible testimony. And the defendant is then prejudiced in a way similar to the way a defendant would be prejudiced if the state began to impeach a witness with a supposedly inconsistent statement but did not have a way of proving that up if it were denied. Well, let me just stop you or ask you this. So in this case, there is the risk of prejudice. Yes. If the voir dire is not conducted outside of the presence of the jury. But in this case, were the elements of 115 actually met and prejudice avoided? I don't think there's any dispute as to the proposition that the elements were not met at the conclusion of the state's attorney's direct examination. How so? Well, the state's direct examination did not elicit a quote-unquote acknowledgement of ever having made a prior statement, which is necessary here. And the state's direct examination, given the fact that that was not elicited, there was no relevant admissible evidence elicited on direct examination. So the public defender or lawyer brought it in uncrossed. There was a very experienced defense lawyer who had made known to the judge during earlier colloquy that his position was this testimony would be entirely inadmissible. So the judge was well aware of the defense position. And when the witness's direct examination concluded, he could have been left there. Well, judge, as a practical matter, I think that to expect a defense lawyer after the jury's heard this inflammatory testimony, actually not testimony, questions, to expect the defense lawyer to just sort of meekly say no questions I think is unrealistic. And indeed, Your Honor, part of the problem here is that by proceeding to cross-examination, the judge misled the jurors, in effect, into believing that some of what they had just heard was admissible because, as indicated at page 50 of our opening brief, the judge told the jurors before this trial began, quote, It shall be my duty during the trial to ensure that only proper evidence is presented to you for your consideration. That is, evidence which is competent, material, and relevant to the charges before you. The prosecutor's direct examination of that witness included none of that. And indeed, the state hasn't argued otherwise in their brief. So what you have then is you have the judge who should have, when it was evident that the proponent's direct examination had yielded no admissible evidence, the judge should have himself called a sidebar and said, Look, state, do you have anything else on this witness? Because if you don't, I'm about to strike this and instruct the jury to disregard it. Is there a case law that indicates that the judge has a duty, sua sponte, to strike that testimony? There is. Well, Judge, again, and sua sponte is a phrase that the state used in their brief, and I'm not sure if that's quite apt here, given the fact that the defense lawyer's objections to this evidence began in opening statement. They went into the colloquy during her testimony. So it was perfectly clear to the judge that the defense position was. There is abundant case law, Your Honor, which I cited, that the proponent of hearsay evidence has the burden of establishing the elements, the necessary foundational elements for admission of that evidence. So it would have been apparent to the judge that this witness had not said anything that was admissible. And what the judge did here, in effect, is the judge basically put defense counsel on something of a trick bag. Because when he says cross, he gives counsel two basic options. He either can get up, as he did, and say something, in which, of course, the jurors are expecting him to say something, because this is extremely inflammatory questioning. And the defense lawyer doesn't want to give any suggestion that he's unwilling or weary to talk to this witness. But there was nothing that the defense lawyer could productively do on this cross-examination,  the witness's testimony on direct examination, and matters relating to their credibility. There was nothing in her direct examination, and there was no reason to go at her credibility. So what the judge did here, perversely, is take a right, a constitutionally recognized right of the defense to cross-examination, and turn it into something that could only benefit the state. But let me move on from there to the judges permitting the state, after the defendant's daughter testified, permitting the state to call two more witnesses, the school social worker, Ms. Salvo, and the school-based police officer, Ms. Panico. And the judge permitted the state to call them to testify as to dramatically different versions of what the witness, who had previously been on the stand, allegedly said to them, than what she had acknowledged. The jury should never have heard the testimony from either one of those witnesses, because there was no conceivable grounds under which their testimony was admissible. The acknowledged statement, at most, was what the witness said in saying, ah-ha, on cross-examination. That was it. And what they were then permitted to testify to was not the acknowledged version. It was a very different version where she is supposedly using the term blowjob, where she is bringing all this up, and it's extremely different, and it's much more damaging than the way it came out on the cross-examination. It's no more legally proper and fair to permit other witnesses to come in and testify as substantive evidence to a statement other than the one that was acknowledged. Then it would be fair, if you had a written statement, to put in the written statement and then have some other witnesses come in and say, oh, but this witness also said these other things in this written statement that was never signed. Or to put in grand jury testimony, for example, and then call somebody on the grand jury to come in and say, well, this person really said X, Y, and Z that's not in the transcript. What happened here is that, at worst for the defense, the admissible evidence was the witnesses saying, ah-ha, in response to the defense lawyer's cross. She didn't acknowledge any of this stuff that these other witnesses had been testified to. So it didn't come in, it shouldn't have come in, that is, as substantive evidence. And it would not permissibly come in as quote-unquote impeachment for several different reasons, including the fact that it's improper to try to impeach a witness you have called with a prior inconsistent statement that does not affirmatively damage your case, as opposed to simply disappointing the prosecution. The prosecution's case was no worse off after Jessica said, ah-ha, than it was before she testified. And LMI's, excuse me, Judge. The LMI rules of evidence also make this crystal clear that you cannot impeach your own witness I'm sorry, just give me one second. Rule 607, that is. Rule 607 of the LMI rules of evidence states that the credibility of a witness may be attacked by any party, including the party calling the witness, except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of affirmative damage. You did not have that here. So this testimony of the school social worker and the police officer was not admissible under any ground. And as I point out in my reply brief, the state in their brief never provides a single reason in support of a proposition that that evidence was properly admitted. They assert it, but they never provide any reasons, any argument, for why it was that the judge should have permitted them to put on these two additional witnesses whom the state used repeatedly in closing argument. For example, and this is at page 32 of our brief, how do you know Jessica was underage? And how do you know that the defendant knew that Jessica was underage? And then he goes on, because he likes young girls. He liked Jessica, he liked Olivia, he liked his daughter. You know the defendant knew Jessica was underage, because if you don't believe that, then you'd better be prepared to call Olivia a liar, Bonnie Salvo, who's the school social worker, a liar, Detective Panico a liar. What the state did here improperly and unfairly with the testimony of the defendant's daughter is use that in effect as a bait and switch. Because what they did is they elicit this supposed acknowledgment. Actually, they do not elicit it. It comes out on cross-examination. And at that point, then, that should have been the end of it. And the state, if they wanted to, could refer to that acknowledgment in closing argument. But what they did instead is they were permitted to call these other witnesses to testify as to statements that were not acknowledged and then to rely on those much more damaging statements in closing argument. Was there an admonishment with respect to the evidentiary value of closing argument? Was there an objection during closing argument upon which the trial judge ruled or not? I'm sorry, I did not. Was there an objection during closing argument, during the state's closing argument? And if there was, did the trial judge admonish that this is not evidence, this is closing? I don't know that there were objections right at that juncture. But, Your Honors, the problem is that the state was repeatedly using what the judge had permitted them to use as substantive evidence, evidence that ought not ever have been admitted. And they made that a cornerstone of their closing argument. But most of it came in from the cross-examination. Your Honor, I would respectfully disagree with that. All that came in through the cross-examination, which was a cross-examination that should never have taken place. Oh, I agree with that. I'm saying, I still get to the point that I think the attorney elected the wrong choice. Your Honor, respectfully, I would say the judge elected the wrong choice because the judge, who repeatedly, throughout the defense lawyers' attempts to introduce evidence, he repeatedly cut them off at the knees by insisting on a pre-testimony proffer, by saying, no, you're not able to satisfy the foundation. None of that is admissible. And there was no time where the judge said, all right, well, let's hear what she has to say. And then when, what the witness says, and then when the defense lawyers are done with direct examination, the judge continues with cross to see if something turns up on cross. Is it simply that at the close of the state's direct examination, the judge says, as we often hear, cross? Is that simply what happened? The judge said cross? The judge said cross. And the first counsel then proceeded to cross? Yes. But the judge, the judge. I don't hear that as a directive as much as it is an inquiry as to whether or not counsel intends to cross. I think that's one of many things that's difficult to know from the transcript, because there are a lot of different ways that that could be said. Again, though, Your Honors, what the judge did in even inviting cross is he misled the jurors into believing that what they had just heard was admissible. He failed to fulfill his pretrial pledge to the jurors to make sure that they only heard evidence that was competent and admissible. And that was the only time throughout this whole trial that he did that. But, again, putting that aside, even if you do not see a problem with what the judge did through the testimony of the daughter, there is no way of supporting what the judge then permitted the state to do in calling the social worker and the police officer. And their testimony was vastly more damaging to the defendant than the daughter's. And not only was it damaging in that way, but it was damaging because it gave the state an opportunity even without saying it, but to return to something they said in opening statement. And what they said in opening statement when they said, I don't know what Erica is going to say, they said, well, if she doesn't say what I say happened and what I say is the truth, it will be because she's trying to protect the defendant. And why is she trying to protect the defendant? Because he's her father. So what the state was able to do was simultaneously, and without any support in the law, introduce a vastly more damaging version of this supposed out-of-court statement without any support in either that statute or any support elsewhere as substantive evidence or any support for use as impeachment. And at the same time, they were able to portray the daughter as being somebody who relied on the stand. Because, look... Counselor, are you going to move on to something else? Because we've spent 29 minutes... And I'm going to be trying to be responsive to the court's questions. But yes, what I will move on to briefly, Judge, is the second source of unfairness here consists of the ways that the judge treated the two sides in a fundamentally different way. And the first example of this is the way that the judge handled evidentiary issues. In a trial that was uninfected by unfairness, the judge would treat evidentiary issues in an even-handed way, treating both sides the same way, and resolving issues based not on who the proponent was, but on the nature of the issue considered in the context of overarching principles of fairness and reliability. That's not what the judge did here. And at pages 41 to 46 of our brief, I provide seven different examples of the way the judge, unlike what he did when it was the state line to get evidence in, insisted that the defense provide him, prior to calling a witness, what he referred to as an offer of proof, demonstrating the admissibility of the evidence, and then would say, no, that's entirely inadmissible. At certain points, an example of page 51, he sustains his own objection because the foundation hasn't been made. If we had the judge, at the time of Erica's testimony, who was ruling the way he was ruling when it was the defense trying to get evidence in, this would have been an entirely different way of submitting. What you had there were two different judges, depending on which side was trying to introduce the evidence. The second way in which the judge treated the parties unfairly is that the judge was openly critical and disparaging of defense counsel. Now, what specifically? You make certain assertions or allegations in here, but as I look through them, there are common things that could go either way, and it appeared to me more that the attorney either wasn't prepared or he just didn't know what he was going to say. Judge, what I would refer to, the best example, I think, is one that is quoted at the top of page 26 of our opening briefing, again, in 60, when, during the cross-examination of the defendant's daughter, again, cross-examination that never should have taken place, defense counsel asks a question, admittedly an improper question, but that's not surprising, given the fact that there weren't really any proper questions that could be asked of this witness, since there was no proper cross-examination to do. And the state objects. Imagine simply saying, sustained. Judge, you're directed to disregard that. The judge says, folks, that's just the kind of evidence, a question and an answer that are absolutely inadmissible and only posited with one purpose. That's to inflame sympathy or bias or prejudice on your part. And that's one of the reasons I'm going to admonish you now to disregard the question and the answer because it was inappropriate. And so even if we were to agree that some of the trial judge's comments perhaps could have been tempered, how was the defendant prejudiced? The defendant was prejudiced, Judge, because I think these things have to be understood in the context of the trial as a whole. And I think that where you've got a judge who treats the defense and the state in a fundamentally different way when it comes to evidentiary matters, when you've got a judge who admits evidence, the testimony of the school social worker and the school-based police officer that is not admissible under any conceivable rationale, this is one more example by eroding the credibility of defense counsel in the eyes of the jurors of an unfairness that permeated this entire trial. Where was the judge who was castigating defense counsel, explorating defense counsel in this way, where was he when the state finished its direct examination of the defendant's daughter and it put questions in front of the head, the jurors hear questions that were, to use the judge's language, absolutely inadmissible, sympathy or bias or prejudice, where was the judge then? Now, there was some instance pre-trial where the state was seeking to have admitted some suggestion or evidence of some physical abuse and the state was seeking to get that in and the judge disallowed it. So, I mean, was that fair, unfair, one-sided? That was fair, but I think the fact that a judge was fair in one instance does not mean that the judge was fair in all instances. Well, I think what I'm hearing you say is that this trial was so terribly unbalanced because of all of the commentary that the judge made and all of the rulings that he made favorable to the state and not favorable to the police. Well, yes, and that does not mean that there are no counter-examples, but if you allow two witnesses, the social worker and the police officer, to testify without any basis in the law, and their testimonies relied on extensively enclosing argument, not only substantively but in effect to demonstrate disbelief in the daughter's testimony. This is the fourth time you've repeated the same argument. I was referring, Judge, to the... I would like you to either give us something new or wrap it up. The other way that the judge did not treat the parties in an even-handed way came when it got to jury deliberations, and the jurors asked for the testimony of three witnesses. Now, how is it unfair when the third thing the church is going to say didn't come in, and he did allow the first two things to come in? I'm sorry. So my concern is you're making conclusionary allegations not supported by fact. Well, Judge, with the trial testimony, they asked for three witnesses, the complainant, another witness, and the defendant. Right, and the defendant's was not available. It was not available. The jury whom you allegedly are representing agreed to that. No. Yes, they did after the initial statement. No, but the defense counsel objected to any of this going back, and the judge repeatedly recognized that they had objected. And, Judge, my point is that an even-handed judge faced with jurors who wanted to hear the whole story, not just the state's version. So what are we supposed to do? What are we supposed to do? Lolling none of it in? Well, it's not a matter of lolling it in. It's a matter of whether you send it back or not. I submit, Judge, that if a judge was most concerned about treating the parties in an even-handed way and in a way that did not favor either side, if it was not possible for whatever reason to send back both sides of the story, which is what the jury asked for, the judge would not have sent any of it back because that would favor the state at the expense of the defendant. Do you think that this was complicated by the fact that the judge would not allow the text messages from the victim to go back? Yes. I think that was another example of the judge's, you know, permitting the state to do certain things and not permitting the defense to do other things. The cases that support the judge's discretion in this matter are all pretty old. Yes. Yes, and discretion assumes that there are multiple reasonable ways of doing something, as there often are with trial matters, and that if the judge elected a reasonable way, we're not going to second-guess it. That, I think, is basically what abusive discretion involves. The judge cited nothing for the evidence that he chose to admit from the social worker and the police officer. That was a decision that could only legally have been made one way, and he failed to make it the only legally proper way. Forgive me, I just forgot. Did the jury come back that night with the decision, or were they back the next day? I believe they came back the same day. Yes. Were the transcripts that were permitted to go back redacted in any way? Was cross-examination included as a part of the transcript? I believe that cross-examination was included. I believe that insofar as they were redacted, they would have been redacted to delete matters of sidebar, matters that had been discussed outside the juror's presence. Is there a case, the case law is old, nonetheless valid, good case law, is there any case anywhere that would support a position that if the defendant's transcript was not available, that none of the transcripts should have gone back? I'm not aware of such a case, Judge, that affirmatively supports that. But one of the things that surprised me when I first became a lawyer, and I think surprises many people, is how many issues there are that aren't directly resolved by cases that are right on point, which, of course, is why we have judges, and why we have both sides being permitted to argue. I submit that this trial was infected with unfairness from beginning to end, and that we were better than this. And by we, I mean lawyers, judges, a criminal justice system, a trial system. And what I would ask the court to do is reaffirm the commitment to basic fairness by wounding out this infection, reversing the convictions here, and remanding the case for further proceedings in front of a different judge. As this Court has done on at least two other occasions when appeals came from this particular judge. The jury heard from the defendant and I think two other witnesses that they all believed that this victim was over more than 18. Yes. Is that correct? Yes. That's correct. They didn't hear her say she told them she was over 18. That's correct. But it was in her text. It was in her text. Somebody who interviewed her for a job said they wouldn't have interviewed her if she were not over 18. I think there was reference to a phony driver's license that she had used. So if her text had gone back, there would have been, you think, a different result? Yes. Yes, there could well have been a different result then. And I think, you know, you've got to keep in mind here too, Your Honors, that even with all of this evidence that we say was extremely damaging, the defendant was acquitted of more counts than he was convicted of. And so I don't think this is a case where one can say with a straight face that the evidence was overwhelming. This was a highly contested trial. The jurors were obviously wanting, again, in the deliberations, to hear again from both sides. They only got one side. And this is a case where I submit the unfairness went to the heart of the trial, particularly when it came to putting on those two witnesses. There was no grounds for putting them on. And for those reasons, Judge, we ask that this court affirm its commitment to fairness, root out that infection, and reverse these convictions, send it back to the trial court with instructions that further proceedings be had in front of a different judge. Thank you. Thank you, Your Honors. Thank you. May it please the Court, Assistant State's Attorney Gina DeVito on behalf of the people of the State of Illinois. The defendant here was properly convicted of two counts of criminal sexual assault and three counts of aggravated criminal sexual abuse, where the evidence at trial overwhelmingly established that the defendant engaged in sex acts with a minor victim. E.H.'s statement was properly admitted under the acknowledgement provision where E.H. acknowledged her prior statement under oath at trial and all of the requirements of the provision were met. This evidentiary ruling was within the sound discretion of the trial court and should not be reversed absence and abuse of that discretion. Counsel, even though the provision does not expressly provide that this type of proceeding or the acknowledgement or the test for the acknowledgement should have happened outside of the presence of the jury, why would the State not have nonetheless insisted on the better practice of conducting the voir dire outside of the presence of the jury? Your Honor, it is established by Justice Steinman in his brother's opinion that it is the better practice to do this. However, that case was not decided at the time of this trial and I don't believe that it was a common knowledge that it was the better practice. The statute itself does not require such a hearing and what the statute requires is that there is an acknowledgement at trial, which is what was done here. This witness acknowledged her prior statement at trial, which is what the statute requires. So although Justice Steinman in the brother's opinion offers guidance regarding what the best practice is, it is not error to not follow the best practice. And perhaps what is difficult for this case is that there are two separate lines of inquiry in regard to a prior acknowledgement of a statement. And those lines are first, was this under the better practice? But most importantly is, was there error? What if any evidentiary errors were there in the acknowledgement of the statement? And here, there was no error where she acknowledged the statement at trial as required under the statute. In addition, brothers is distinguished from this case because there the witness did not acknowledge the prior statement. And even so there, where she did not acknowledge the prior statement, the court found that the error that was committed there was harmless error. So even if there was an error here, that error was harmless because there was a limiting instruction given to the jurors. And in addition, the properly admitted evidence was overwhelming. There was no reasonable probability that if the evidence had been excluded, the outcome of the trial would have been different, as the evidence overwhelmingly supported defendant's conviction. Counsel, what do you say to defense counsel's argument with respect to the testimony of the social worker and the police officer who were permitted to offer testimony subsequent to the, I'll call it acknowledgement for lack of a better term, knowing that there is some disagreement? What about from testifying to the prior statement? Counsel argues that that testimony should never have come in and that there was an objection to it and trial court allowed it unfairly. But that is what was allowed under the acknowledgement provision that we, because there was no prior handwritten statement to get in the testimony, that that statute permits such testimony of the social worker and the detective. Counsel argues that that testimony came in as potentially impeachment testimony? The substance of what E.H. acknowledged at trial was that she had performed oral sex on her father so that she would be allowed to go out. And that is what the detective and the social worker testified to. And it was under the trial court's discretion regarding whether he felt that E.H. acknowledged her prior statement and the trial court certainly ruled that there was an acknowledgement and there was no abuse of discretion in this acknowledgement where the substance of the statement was the same. What about counsel's argument that this judge was just prejudiced against their, their client and he, he doesn't, he doesn't seem to give specifics. He keeps making general statements about it. And he doesn't indicate where the judge specifically was. Would you like to address a few of those? Yes, Your Honor. He seems to have kind of overwhelmed us that this judge was just horrible. Your Honor, when reviewing the trial transcripts in its full context, it is clear that the trial judge did not exhibit judicial bias. The rulings once examined were appropriate and the remarks were a result of what the defense counsel was attempting to do at trial. It appears almost as though this counsel was agitating the judge with the way he was presenting his arguments. I would agree with that, Your Honor. In fact, the statement that defense counsel just spoke about where the trial court admonished the jurors about, about the testimony of E.H.,  if the prosecution had called her specifically because they wanted to slander her father, which was a very inappropriate question. And it was appropriate for the court to admonish the jurors. And the record is clear that the question was not relevant as to why the witness thought she would be called to testify. And, and defense counsel does not argue that the objection should have been sustained, should not have been sustained, excuse me. In regard to the transcript testimony that was admitted at trial, as Your Honor agreed, that is what was available. And it certainly was not outside of the judge's discretion to provide what was available and explain to the jurors who were present for the whole trial. That defense, defendant's testimony was not available as he had testified until the late hours of the night before. In fact, that, the second day of the trial finished at 7.30 at night, and this was requested at 3.15 the following day. And the jurors did reach a verdict about 7.10 that day. Which 7.10 the day after the trial ended? Well, the trial ended that day with closing arguments and the jury went out. At about 7.30? I'm sorry, I'm sorry, there was three days of trial. And at the trial, defense clerk rests about 7.30 on one night? The 7.30 the night before, the testimony had gone until 7.30, the second day of the trial. So the transcripts that were provided occurred during the first day of the trial. So the jury would see what the trial court explained to them, that this testimony is not available as we went late into the night, the second day of the trial. And this was requested the third day at 3.10 after closing arguments. I'm sorry, am I confusing? I'm understanding you, I'm just not buying it. Oh, okay. Do you think the jury was somehow more persuaded or they had the opportunity to read the state's witness' testimony in addition to, I don't know, whether the judge permitted note-taking during the trial? Most do. Do you think that they might have been more persuaded because they had an opportunity to review and review and review the testimony? No, Your Honor. They had the transcripts for a matter of three hours back in the jury room. But beyond that, I mean, the jurors heard all of the testimony and were present for the entirety of the trial. Well, then the testimony they got in the transcripts was redundant. They had their notes, they had their memory. And it was the trial court's discretion as to whether to provide them with what was available. And case law does show that it is not an abuse of the trial court's discretion to provide jurors with only the prosecution's witnesses. I'm positive you agree. Well, they didn't get just the prosecution's witnesses. They got the cross-examination of the witnesses. That's correct. He got the entire jury. So, in effect, you got both sides except for the one witness. But not the defense testimony and not the text. Not the defense testimony. And the text messages were the defense had a difficult time getting in any of that at trial. They did not have the proper witnesses to admit that evidence. And that was part of defense counsel's complaints of the judge having bias. But the judge actually permitted a great deal of testimony that should not have come in because he wanted to allow defense counsel to perfect their impeachment. Maybe I read this wrong. I thought the state asked a lot of questions about the text. The state only asked questions of the defendant about the text in impeaching his testimony about what he had referred to the victim as. This seems to be another example where the judge was fairer than counsel wants to allege because technically none of that should have come in because they did not have a proper expert to put it in. And that, again, goes to my theory that the attorney representing the defendant was not the greatest because he should have had somebody that could do that. The judge isn't biased. It's just counsel is laying it on the judge when it's the attorney that represented his client was the one that it should be laid on. And that's probably an argument that counsel should have made in his brief. Yes, certainly defense counsel vigorously defended his client. And you are correct, however, that the trial judge did permit more evidence than was completely proper. Regarding the testimony being sent back, regardless, if there was an error in sending that back, it would be harmless because the overwhelming testimony here established that defendant sexually assaulted JV in numerous instances. And both through the testimony of JV and O.L.'s undisputed testimony that defendant exhibited a predatory habit of sexually assaulting underage female victims. Both O.L. and J.V. both testified that defendant made the girls masturbate him. Defendant said, say you're my bitch to both these girls who did not know each other. That he offered both girls money. And J.V. credibly testified to the sexual assaults the defendant perpetrated against her. Detective Brown, two hotel employees, an employee from Lovers Lane, all corroborated J.V.'s testimony. O.L.'s credible testimony that established defendant's propensity to use his position of authority to sexually assault minors as he did with J.V. Since counsel makes an argument with respect to the authority issue, can you address that? I think, I can't remember now whether it's raised as a sufficiency claim or whether it's made in the context of the defendant having been charged as having authority. Can you address that? Yes, his argument was that the state did not prove that defendant was a counselor at the Boys and Girls Club. However, the people overwhelmingly proved that defendant held a position of trust and authority in relation to the victim. Where it was shown that defendant was employed by the Boys and Girls Club as a street smarts coordinator. And did work there with troubled and at-risk children. His own testimony corroborated this. He was the victim's running coach. He had his own office there where he met with these children and he gave presentations at the victim's school. He helped the victim find employment. And O.L. testified and called him a counselor. Regardless, the counselor language was surplusage. And to show a fatal variance in the charge, he had to show that he was prejudiced by the indictment in mounting a defense. And this was never defendant's defense here. Defendant's defense was that he could not have an election and that he thought the victim was 18 years of age. Let me ask you a question. The individuals who enjoyed membership with this Boys and Girls Club. How was membership applied for? Is there a written form? Is there an application? And then I guess second to that, would the defendant have had access to that application information? Which would I have some identifying? The testimony at trial was that there was an application process. And that defendant was in charge of those applications and held them in his own files. Are you familiar with the substance or the information that's provided on the application form? That is not part of the record on appeal that I'm aware of, Your Honor. And regardless, in terms of the variance argument, there was no risk of double jeopardy where the indictment set forth the offense, the date, the victim, the age, and the acts against the victim. If Your Honors have no further questions, the proper evidence established at trial was overwhelming and showed that defendant sexually assaulted the underage victim and any errors did not prejudice defendant depriving him of a fair trial. For those reasons and those stated in our brief, we ask that you reject defendant's contentions and confirm his conviction. Thank you. Justice Cobbs, picking up on your point about the legal sufficiency argument first, there were two parts to that argument. One, that they didn't prove the particular alleged position as a counselor. The other was that they did not prove that he held this role at the time the charged acts were committed. As to the first and the State's variance argument, I concede, and in fact I did not address that in our reply brief, I concede that this was not a variance that prejudiced the defense in preparing for trial. But the second point, which the State did not address, is that the evidence that was undisputed was that she had a one-year membership. Excuse me, Your Honors, I have pride in my throat. She had a one-year membership that began in March of 2009 and that expired in March of 2010. The acts here were all allegedly committed in late 2010 and late, I'm sorry, into 2011. The statute does not say that a person holds or held a position of trust. It says that a person has to hold a position of trust, and it's Hornbook law that where a statute has different elements, those elements have to exist contemporaneously, the act, the state of mind, and anything else. So the crux of our argument on the sufficiency, and the reason I did not address that point initially, was because it was sort of a separate, self-contained issue. But that is, the crux is the chronology. Your Honor asked also, Justice Cobbs, you asked why wouldn't the State have proposed doing this best practice of having the examination outside, preliminarily outside the presence of the jury. And I submit, Judge, that you just have to look at the State's opening statement to know why they wouldn't do that. Because the State, in opening statement, was permitted improperly to tell the jurist, look, I don't know, I'm going to call her, I don't know what she's going to say. But if she doesn't say what I say, she's going to say, okay, because she's lying, and she's lying to protect your father. They had already committed, in opening statement, that they were going to be able to put her on. Whether they were going to be able to elicit any admissible evidence or not, they were going to put her on. And so, of course, I think, they would not want a preliminary volunteer examination to determine the admissibility of her testimony, because at the end of that, if that went the way the direct examination had gone, the jurist would have never heard from this witness at all, nor would they have ever heard from the other witnesses at all on that particular point. So they had committed improperly, in opening statement, to going down that road. The State refers, and the reference was somewhat vague, but to eliminating instruction being given to the jurors in regard to the testimony, if I understood it, as to the defendant's daughter or the other related witnesses. Still, there was no limiting instruction given. There was no instruction given at all limiting the ways that the jurors could consider that evidence. The State then reads this statutory provision, the statute on which they relied here, Section 115-10.1. As the courts are aware, there are several different routes by which testimony, prior and consistent testimony, may be admitted. This one is, my hunch, this is probably the least often used. What you can have is you can have prior testimony, which doesn't require acknowledgement. You put the witness on, they say something different than what they said previously, you bring in the prior testimony. Prosecutors do that all the time, particularly in gang cases, because they put the witness in front of the grand jury to lock them in. You can also have the witness's written statement, and that can be a foundation. You can also have an audio or video recording of the witness's statement, or you can have the acknowledgement. What's important about looking at this provision in the context of these other foundational routes is that these other foundational routes make it clear that what you do not want to have the jurors arguing about is what the witness said. You may want the jurors to be able to argue about what the weight of it was, how it should be interpreted, but you want there to be certainty as to what the witness said. And there is if you have prior grand jury testimony. There is if you have a prior recorded statement. There is if you have a prior written statement. And there is under the acknowledgement provision only insofar as the statement as acknowledged by the witness is permitted to be introduced. That is the only statement that is admissible under this provision. And in brothers, and this isn't a matter of best practices, it's just a matter of law, a witness's prior inconsistent statement should not be admitted under section C2B through the testimony of another live witness. And that's because if the other live witness is saying what the witness acknowledged, it's cumulative. And it simply repeats the evidence and magnifies it. Which might be prejudicial if it's cumulative. Right. But then the state argues there was this other testimony which was significantly more damning. The testimony of the victim and of O.L. Right. So what do we do with that testimony? Because even if we can conclude that the testimony of, I'm going to get the initials all mixed up, but the testimony of the acknowledging witness. I know. What then do we do with the other testimony of the two other females who are claiming sexual misconduct? Well, I think one thing that you do is recognize that the jurors had some significant problems with their credibility, both individually and collectively, because if they had not had problems with their credibility, they would not have acquitted the defendant on more than half the charges. This was a very, at best for the state, a very close case. And what happens here is getting in these other, the social worker and the cop, the police officer, getting in their versions that are not admissible under any evidentiary rationale, allows the state not only to rely in closing argument on a much more damaging version, it's vastly more damaging, if your theory is that the defendant's daughter in fact performed oral sex and was required to on her father, it's vastly more damaging to the defense. If that comes in through the testimony of a social worker and a police officer, comes in improperly for them to say, yes, she said that, she had a foreign blowjob, blah, blah, blah. Then if it comes in the way it came in, in the cross-examination of this witness, that at most she said, uh-huh, in response to hours of questioning because she was getting worn down. And further, as I indicated, what this testimony allowed them to do was not only have it be substantive evidence, but improperly use it to impeach her version. Because the state didn't talk at all about her version in closing argument. They only talked about these other versions that ought not to have come in. So, I'm not asking you to ignore any of the evidence. What I'm asking you is to see that this was a case where the jurors were clearly struggling. They acquitted the defendant of more than half the charges. They clearly had problems with the state's case, parts of it. Otherwise, they would have found the defendant guilty on all 11 charges. And so the question is not what should we do with this other testimony. The question is whether this other testimony constitutes overwhelming evidence, such that there's no reasonable possibility of a different result if the defendant had had a fundamentally fair trial. So, just one more question, and I won't ask again. So, it's a three-day trial, and the jury deliberates for three hours. And the jury, you say, was confused, or? No, I didn't say they were confused. I said that they were conflicted and that they could not find the evidence sufficiently compelling. And they came back after they were permitted to review the transcripts of the two prosecution witnesses and not the defendant. If your honors were to hold, as the state apparently suggests that you do, that the testimony of the social worker and the police officer was legally appropriate, legally proper, that would totally rewrite this statute, not only by its terms but also the purpose of it. Michael Graham quoted page 56. The whole point of the acknowledgement provision is like these other provisions to provide, quote, a high degree of certainty that the statements were, in fact, made. At most, the only statement that there was a high degree of certainty that it was made was the acknowledgement. Uh-huh. Okay, Counselor, are you done? Yes, I am. Thank you. Thank you very much. Thank you.